**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Upper Darby School District** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **K.W. et al.,** | : | |
| *Defendants.* | : | **NO.  22-cv-04343** |
| | | |
| **Ka'Shaad W.,** | : | **CIVIL ACTION** |
| *Plaintiffs,* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **Upper Darby School District** | : | |
| *Defendant.* | : | **NO.  22-cv-04347** |

<u>**MEMORANDUM**</u>

**Kenney, J.**                                                                               **July 27, 2023**

The Individuals with Disabilities Education Act ("IDEA") requires states to provide a "free appropriate public education" ("FAPE") to all students who qualify for special education services. 20 U.S.C. §1400, *et seq*.

K.W. is a minor student with disabilities as defined under 20 U.S.C. § 1401 and is qualified for special education services under the IDEA. (ECF No. 1 ¶ 6 in Civil Action 22-04347).[1] K.W. has been attending the Upper Darby School District (the "District") since the fall of 2016. ECF No. 20-1 at 3; ECF No. 21-1 at 1.[2] K.W. previously resided with his mother, Taneesha B. ("K.W.'s

---

[1] K.W. is "diagnosed with Autism Spectrum Disorder, Anxiety, and Attention Deficit Hyperactivity Disorder ("ADHD") and is eligible under the IDEA for special education. ECF No. 5-14, Ex. P-12 at 2.

[2] The cross-complaints were later consolidated. All citations to ECF No. 5 refer to the Administrative Record filed in Civil Action 22-04347. All other ECF citations, unless otherwise specified, refer to Civil Action 22-04343

Mother"), and he currently resides with his father, Thomas K. ( "K.W.'s Father") (all collectively "the Family"). (ECF No. 1 ¶¶ 10-11 in Civil Action 22-04343).

This case arises from cross-complaints appealing Special Education Hearing Officer Cathy A. Skidmore's ("Hearing Officer Skidmore" or the "Hearing Officer") administrative decision (ECF No. 5-3), which was issued on July 31, 2022, following evidentiary hearings on April 21, June 15, and June 16, 2022. ECF No. 1 ¶ 4 in Civil Action 22-04347).

Presently before the Court are fully briefed cross motions for judgment on the administrative record. *See* ECF Nos. 20, 21, 24, 25, 26. For the reasons set forth below, the Family's Motion for Summary Judgment on the Administrative Record (ECF No. 20) is granted in full and the District's Motion for Summary Judgment on the Administrative Record (ECF No. 21) is denied. Appropriate Orders will follow.

## I.  PROCEDURAL HISTORY

On March 7, 2022, the Family filed a due process complaint with the Pennsylvania Office for Dispute Resolution on behalf of K.W. seeking (1) compensatory education from the 2020-21 school year until the date the District offered an appropriate program; (2) an order that the District's actions regarding Student's removal from The Y.A.L.E. School ("YALE") violated the IDEA and Section 504 of the Rehabilitation Act of 1973 ("Section 504"); (3) a determination that the November 22, 2021 and November 30, 2021 Individual Education Programs ("IEP"), including K.W.'s placement at Devereux, are inappropriate; (4) an order requiring the District to identify and provide an appropriate program and placement for K.W. going forward; and (5) reasonable attorney's fees and costs. (ECF No. 11-3 in Civil Action 22-04347 at 5).

Hearing Officer Skidmore ultimately ruled that the District had provided K.W. a "free appropriate public education" ("FAPE") for the 2020-21 and 2021-22 school years. ECF No. 5-3

at 32. However, the Hearing Officer found that the District denied K.W. a FAPE from April 18, 2022 until K.W. began an appropriate out-of-District educational program,[3] and awarded the Family relief.[4] *Id.* at 33. Hearing Officer Skidmore also ruled that the District was required to convene the IEP Team to "consider additional program and placement options for full-time autistic support for [K.W.] for the start of the 2022-23 school year." *Id.* Both parties appealed the administrative decision by filing Complaints with this Court on October 31, 2022. (*See* ECF No. 1 in Civil Action 22-cv-04343; ECF No. 1 in Civil Action 22-cv-04347).

On January 9, 2023, this Court granted the District's uncontested motion to consolidate the two dockets, pursuant to Federal Rule of Civil Procedure 42. (ECF No. 9 in Civil Action 22-cv-04343; ECF No. 10 in Civil Action 22-cv-04347). On January 13, 2023, the District filed a motion to dismiss the Family's claims arising under the ADA.[5] (ECF No. 11 in Civil Action 22-04347). Upon review of the parties' motions, on March 2, 2023, this Court dismissed the ADA claim, leaving the Family's IDEA and Section 504 claims remaining, reasoning that any claim under the ADA had been waived for purposes of this proceeding. (ECF No. 19 in Civil Action 22-cv-04347).

On May 1, 2023, both parties filed their cross-motions for judgment on the administrative record. ECF Nos. 20, 21. On May 11, 2023, this Court issued an order for a hearing to be held on June 22, 2023 (ECF No. 22), and both parties filed their respective responses to the opposing

---

[3] K.W. began a new program on September 28, 2022. ECF No. 16-1 ¶ 4.

[4] "Five hours of compensatory education for each day that the District's schools were in session from April 18, 2022 through the end of the 2021-22 school year, and for each day that an appropriate program and placement are not made available to Student at the start of the 2022-23 school year. The District may offset the award of compensatory education by the number of hours of tutoring provided by staff of the second private psychologist." ECF No. 5-3 at 30.

[5] On January 27, 2023, the Family filed its opposition to that motion to dismiss in part. (ECF No. 13 in Civil Action 22-04347). Then, on February 9, 2023, the District filed its reply to the Family's opposition. (ECF No. 18 in Civil Action 22-04347).

party's motion. ECF Nos. 24, 25. On June 15, 2023, the Family filed its sur-reply in opposition to

the District's motion for judgment on the administrative record. ECF No. 26. On June 22, 2023,

this Court held a hearing on the parties' cross-motions for judgment on the administrative record.

ECF No. 28.

The District asks this Court to review Hearing Officer Skidmore's ruling and:

(1) uphold her "conclusions as to the appropriateness of the District's programming for K.W.
during the 2020-21 school year and the 2021-2022 school year";
(2) uphold her "determination that the District's proposed program at Devereux in November
2021 was appropriate"; and
(3) reverse her order requiring "the District to reconvene the IEP Team to consider additional
placement options for K.W. and awarding K.W. compensatory education."
(ECF No. 21-1 at 3.)

The Family seeks this Court's intervention to obtain "additional relief omitted" by the

Hearing Officer who:

(1) "incorrectly determined that the District provided a FAPE during the 2020-21 and 2021-
22 school years up to April 18, 2022 despite K.W.'s inadequate IEPs, lack of meaningful
progress and the District's unilateral removal of K.W. from his placement without
compliance with the IEP process";
(2) "omitted Extended School Year 2022 from the compensatory education award despite
[K.W.'s] lack of appropriate program for summer 2022"; and
(3) "incorrectly permitted the District to subtract tutoring hours from the Family's
compensatory education award."
(ECF No. 20-1 at 2.)

The Family asks this Court to "independently review the record and reverse the Hearing

Officer's determination that the District provided [a] FAPE before April 2022 and award

appropriate relief." *Id.*

Thus, this Court is asked to review Hearing Officer Skidmore's conclusions based on the

administrative record and determine whether student K.W.:

(1) received a FAPE during the 2020-21 school year;
(2) received a FAPE during the 2021-22 school year; and

(3) is entitled to a compensatory education or additional relief.
(*See* ECF No. 5-3 at 33-34.)

## II.   FACTUAL BACKGROUND

In April 2019 the District, through its IEP process, placed K.W. at the Vanguard School ("Vanguard"), where he remained for the 2019-20 school year. ECF No. 5-3 ¶ 9; ECF No. 20-1 at 3 (citing ECF No. 5-14, Ex. P-24 at 3). On September 19, 2019, an independent educational evaluation ("IEE") conducted by Dr. Steven Kachmar ("September 2019 IEE") revealed that K.W. had significant disabilities in executive functioning and social-emotional and behavioral functioning, including hyperactivity, rule-breaking behavior, aggression, anxiety and depression, and inattention, and well-below-average social skills. ECF No. 5-3 ¶¶ 10-14; ECF No. 20-1 at 4.

Unlike K.W.'s later IEPs, the Vanguard IEP described some of K.W.'s behavioral problems, such as shouting obscenities an average of three times a week, hitting and kicking an average of 1.8 times per week, and eloping from the classroom an average of three times per week. ECF No. 5-14, Ex. P-16 at 30-32. During the spring of 2020, K.W. was removed from Vanguard, and the District convened an IEP meeting. ECF No. 5-3 ¶ 16. K.W.'s IEP was not revised at this point to include an individualized Positive Behavior Support Plan ("PBSP") based on an Functional Behavioral Assessment ("FBA"). *Id.* at 7, n.7.

Then, at the start of the 2020-21 school year, the District placed K.W., through the IEP process, at the Philadelphia Campus of the Y.A.L.E. School ("YALE"), a private academic school licensed through the Pennsylvania Department of Education ("PDE"). ECF No. 5-3 ¶ 17; ECF No. 20-1 at 3. K.W. began the school year attending YALE virtually due to the COVID-19 pandemic and started attending in-person on November 2, 2020. ECF No. 5-3 ¶ 19; ECF No. 20-1 at 4. On December 4, 2020, the District convened an IEP meeting to develop K.W.'s first IEP while at YALE. ECF No. 5-3 ¶ 24; ECF No. 20-1 at 4. This IEP noted that K.W. did not "exhibit behaviors

that impede his learning or the learning of others" despite his history of disruptive behavior. ECF No. 5-10, Ex. SD-5 at 10; ECF No. 5-12, Ex. P-2 at 10; *cf.* ECF No. 5-7, N.T. 190-92; *see also*, ECF No. 5-12, Ex. P-1 at 18 ("[K.W.]'s educators report that he engages in a clinically significant level of aggressive behaviors."). In fact, this IEP did not include any goals related to K.W.'s social-emotional skills, behavior, or self-regulation. *See* ECF No. 5-10, Ex. SD-5; ECF No. 5-12, Ex. P-2.

During the 2020-21 school year, K.W.'s Mother "advocated" for K.W. when she had concerns about K.W.'s academic progress, his peer interactions, or about YALE's staff. ECF No. 5-3 ¶ 33; ECF No. 20-1 at 5. K.W.'s Mother expressed concerns about K.W.'s "frequency of speech services, the effectiveness of his 1:1, and his academic progress to the District and YALE, but the IEP was not revised." ECF No. 20-1 at 5. K.W. exhibited behavioral problems during the school year, which required de-escalation. ECF No. 5-3 ¶ 29.

The record shows that K.W. was often frustrated, yelling, or running around the classroom. ECF No. 5-7, N.T. 190-92, 206-07. YALE employed the School-Wide PBSP rather than an individualized PBSP based on a functional assessment of behavior.[6] ECF No. 5-3 ¶ 29; ECF No. 20-1 at 6.

On February 24, 2021, the IEP team reconvened to discuss some of K.W.'s Mother's concerns, but the District did not revise K.W.'s Special Considerations section to address K.W.'s behavioral needs. ECF No. 5-3 ¶ 30; *see also*, ECF No. 5-11, Ex. SD-23 at 9. During the summer and early fall of 2021, testing was conducted by Dr. Eric Mitchell at Neurodiversity Consultants LLC following K.W.'s Mother's request to obtain an IEE from the District. ECF No. 5-3 ¶ 35;

---

[6] *See* "Functional Behavioral Assessment Process" Pennsylvania Training and Technical Assistance Network ("PaTTAN"). https://www.pattan.net/Publications/Functional-Behavioral-Assessment-Process

ECF No. 20-1 at 6. A final report was issued on September 25, 2021 (the "Mitchell Evaluation").
ECF No. 2-10 at 6; *see also*, ECF No. 5-12, Ex. P-3. This report found that K.W. required an
individualized PBSP based on an FBA—a suggestion the District still failed to implement. *See*
ECF No. 5-12, Ex. P-3 at 36.

The only behavioral data in the record from the 2020-21 and 2021-2022 school years was
captured between September 23 to November 19, 2021. ECF No. 5-13, Ex. P-6 at 19. This data
comes from Behavior Analyst Sandra Rogers. *See id.* The data show that from the start of the
2021-22 school year, K.W.'s behavior "deteriorated . . . on average engaging in physical
aggression at least 1 time per day; verbal aggression at least 3.5 times per day; inappropriate social
behavior at least 14 times per day; peer taunting at least 1 time per day; task refusal at least 1 time
per day; and elopement less than 1 time per day." ECF No. 20-1 at 7; ECF No. 5-13, Ex. P-6 at
19; *see also*, ECF No. 5-6, N.T. 314-17.

Ms. Rogers recommended "additional behavioral supports" and the "completion of a
Functional Behavior Assessment and Individualized Positive Behavioral Support Plan as the Tier
1 and Tier 2 supports are insufficient at this time to produce a sustained and meaningful reduction
in challenging behaviors" ECF No. 5-13, Ex. P-6 at 19. Yet, the December 2020 IEP was still in
place and the District did not convene an IEP meeting or create an individualized PBSP with
parental input, nor did it conduct an FBA. ECF No. 5-3 ¶ 45; ECF No. 20-1 at 7.

On November 4, 2021, the District received notice from YALE that YALE was terminating
its services for K.W., and that his last day would be Friday, November 19, 2021. ECF No 5-3 ¶
50; ECF No. 21-1 at 1-2. This date was later extended to Wednesday, November 24, 2021. ECF
No. 5-3 ¶ 51; ECF No. 20-1 at 8; ECF No 21-1 at 11. The Hearing Officer speculated that YALE

would have updated K.W.'s IEP to include an individualized PBSP based on an FBA. ECF No. 5-3 at 26. However, this assessment was based on the retrospective "word" of YALE employees. *Id.*

On November 14, 2021, counsel for the District emailed counsel for the Family that the District had made initial referrals to four schools: Devereaux, DCIU-New Pathways, Fairwold, and Royer Greaves School for the Blind. ECF No. 21-1 at 12; ECF No. 20-1 at 8; *see also* ECF No. 5-10, Ex. SD-12. On or about November 15, 2021, the Family filed a due process complaint challenging K.W.'s removal from YALE for taking place outside of the IEP process. ECF No. 5-3 ¶ 52; ECF No. 20-1 at 8.

On November 17, 2021, the District informed the Family that it was convening an IEP meeting on Monday, November 22, 2021 with staff from Devereux Brandywine, the new placement the District was already recommending before any parental input or an IEP meeting. ECF No. 20-1 at 8. The District issued Prior Written Notice to the Family of an impending meeting of the IEP team to discuss K.W.'s placement, which the Family "rejected." ECF No. 5-13, Ex. P-6 at 82-85; *see also*, ECF No. 20-1 at 9. K.W.'s counsel advised the District via email that day that the Family was not available on the day selected by the District due to scheduling conflicts, but that the Family wanted to participate in the IEP meeting. ECF No. 5-3 ¶ 52; ECF No. 20-1 at 9.

Later that month, on November 30, 2021, the parties, including counsel, participated in another IEP meeting. ECF No. 5-3 ¶ 56; ECF No. 20-1 at 10; ECF No. 21-1 at 13. According to the District, its plan was to implement the same IEP K.W. had at YALE, which did not include an individualized PBSP based on an FBA. ECF No. 28 at 20:19-24. On December 15, 2021, the District and Family reached an interim agreement whereby the District would make referrals to five additional schools (selected by the Family). ECF No. 5-14, Ex. P-19; ECF No. 5-3 ¶ 56; ECF No. 21-1 at 14-15. While the agreed-upon referrals were pending, the District would provide

reading and math instruction through Neurodiversity Consultants, a private program that helps support individuals with Autism, in K.W.'s home. ECF No. 5-3 ¶ 55; ECF No. 21-1 at 14-15.

In late January 2022 the District began to provide the agreed-upon tutoring, which was "inconsistent" and ended due to "issues with the District providing payment for travel time." ECF No. 20-1 at 10. On February 28, 2022, K.W.'s Mother was displaced from her residence, so K.W. temporarily moved outside of the district. ECF No. 5-7, N.T. 44-45, 88. By the end of February 2022 K.W. had not been accepted to any of the five schools. ECF No. 5-3 ¶ 54; ECF No. 21-1 at 15; *see also*, ECF No. 5-11, Ex. SD-42; ECF No. 5-11, Ex. SD-43.

K.W.'s Parents then filed a new administrative due process action against the District, alleging that the District had denied K.W. a FAPE (Free Appropriate Public Education). ECF No. 5-16; *see also*, ECF No. 21-1 at 15. In April 2022, the District agreed to pay travel time associated with the tutoring services, but no one ever reached out to the Family to restart services. ECF No. 20-1 at 10. Finally, on July 31, 2022, Hearing Officer Skidmore issued her administrative decision. ECF No. 21-1 at 2.

## III.   <u>STANDARD OF REVIEW</u>

The standard for federal review of a state special education administrative decision is "modified *de novo*." *S.H. v. State-Operated Sch. Dist. of the City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003). This means a district court must make its own findings of facts by a preponderance of the evidence while also giving "due weight" to the factual findings of the Special Education Hearing Officer. *Mary T. v. Sch. Dist. of Phila.*, 575 F.3d 235, 241 (3d Cir. 2009); *see also, Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982). "Due weight" means "[f]actual findings from the administrative proceedings are to be considered *prima facie* correct." *S.H.*, 336 F. 3d at 270.

The modified *de novo* standard exists "to prevent the court from imposing its own view of preferable educational methods on the states." *Oberti v. Bd. of Educ.*, 995 F.2d 1204, 1219 (3d Cir. 1993). Yet, the district court is afforded discretion to determine the amount of deference owed to the administrative proceedings. *Id*. Courts are required to "consider—although not necessarily… accept—the administrative fact findings." *Carlisle Area Sch. Dist. v. Scott P.*, 62 F.3d 520, 529 (3d Cir. 1995). A district court that departs from the Hearing Officer's determinations of fact should "fully explain… its reasons for departing." *S.H.*, 336 F.3d at 271.

Under the foregoing standards, a district court is "authorized to make findings based on the preponderance of the evidence and grant the relief it deems appropriate." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010); *see also, Schaffer v. Weast*, 546 U.S. 49, 62 (2005) ("The burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief."). Thus, the party challenging the Hearing Officer's decision bears the burden of proving that the decision was incorrect. *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 392 (3d. Cir. 2006).

## IV.   <u>DISCUSSION</u>

The dispute between the parties regarding K.W.'s education for the 2020-21 and 2021-22 academic years turns on whether K.W. received a FAPE under the IDEA and Section 504, both procedurally and substantively. *See Rowley*, 458 U.S. at 177. The obligation to provide a FAPE is substantively the same under Section 504 and the IDEA. *See Ridgewood v. Bd. of Educ.*, 172 F.3d 238, 253 (3d Cir. 1995) (superseded by statute on other grounds as recognized by *P.P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 730 (3d Cir. 2009)).

As defined under the IDEA, "a FAPE comprises 'special education and related services'— both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to

permit the child to benefit from that instruction." *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 158 (2017) (quoting 20 USCA § 1401). It is also well-settled that "education" under the IDEA includes behavioral components and extends beyond discrete academic skills. *Zachary J. v. Colonial Sch. Dist.*, 2022 WL 580309 *12 (E.D. Pa. Feb. 24, 2022) (citing *Sean C. v. Oxford Area Sch. Dist.*, 2017 WL 3485880 *8 (E.D. Pa. Aug. 14, 2017) (quoting *M. v. Penn Manor Sch. Dist.*, 2015 WL 221086 *4 (E.D. Pa. Jan. 14, 2015) ("In the context of the IDEA, 'education' extends beyond discrete academic skills and includes the social, emotional, and physical progress necessary to move the child toward meaningful independence and self-sufficiency consistent with the child's cognitive potential."); *see also, M.C. v. Central Reg'l Sch. Dist.*, 81 F.3d 389, 393-94 (3d Cir. 1996) (holding that the District Court was within its right to find the denial of a FAPE where the student had "untapped potential" and non-academic needs that were not met by his IEP). "Where a student's behavioral problems are impeding [his or her] ability to learn, and the school district fails to address those problems in an appropriate way, such a failure may constitute a denial of FAPE." *R.B. v. Downingtown Area Sch. Dist.*, 509 F.Supp.3d 339, 347 (E.D. Pa. 2020).

To meet these needs, the IEP serves as "the 'primary vehicle' for providing each child with the promised FAPE." *Fry*, 580 U.S. at 158 (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)). Thus, a student's IEP serves as a procedural mechanism by which that student's substantive right to a FAPE is ensured. *See Rowley*, 458 U.S. at 206. The "degree" of progress and educational benefits "contemplated by the IEP must be appropriate in light of the child's circumstances." *Endrew F. v. Douglas Sch. Dist.*, 580 U.S. 386, 400 (2017). "If these requirements are met, [the District] has complied with the obligations imposed by Congress and the courts can require no more." *Id.*

Applying the modified *de novo* standard of review, this Court must assess whether the District (1) "complied with the statutory procedures"; and (2) substantively, whether "the individualized program developed through such procedures [was] reasonably calculated to enable the child to receive educational benefits." *Rowley*, 458 U.S. at 177.

Procedurally, parents enjoy the right to have "a significant role in the IEP process." *Schaffer,* 546 U.S. at 53*.* Therefore, a FAPE may be denied where there has been a "significant imped[iment]" to meaningful decision-making by parents. 20 U.S.C. § 1415(f)(3)(E)). This however does not mean that the parent(s) possess "veto" power. *Y.B. v. Howell Twp. Bd. of Educ.*, 4 F.4th 196, 203) (Roth, C.J. concurring) (citing *Doe v. E. Lyme Bd. Of Educ.,* 790 F.3d 440, 449 (2d Cir. 2015) ("the duty to issue an IEP remains with the educational agency… and a parent's right of participation is not a right to 'veto' the agency's proposed IEP.")). "A procedural violation of the IDEA is not a per se denial of a FAPE; rather, a school district's failure to comply with the procedural requirements of the [IDEA] will constitute a denial of a FAPE only if such violation causes substantive harm to the child or his parents." *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 66 (3d Cir. 2010).

Substantively, "a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F.,* 580 U.S. at 399.[7] The IEP *must aim* to enable the child to make progress." *Dunn v. Downingtown Area Sch. Dist.*, 904 F.3d 248, 255 (3d Cir. 2018) (emphasis supplied). This means that the IEP must provide "more than a trivial educational benefit… but it does not have to maximize the child's potential." *Norristown Area Sch. Dist. v. F.C.*, 636 Fed. App'x. 857, 861 (3d Cir. 2016). Because individualization is the

---

[7] The District and its agents are not required, however, to "provide 'the optimal level of services,' or incorporate every program requested by the child's parents." *Ridley School District v. M.R.*, 680 F.3d 260, 269 (3d Cir. 2012).

touchstone of this consideration, "whether an education is 'appropriate' depends on the individual

child's abilities and needs." *Id.* The absence of a "bright-line rule, however, should not be mistaken

for an invitation to the courts to substitute their own notions of sound educational policy for those

of the school authorities which they review." *Endrew F.*, 580 U.S. at 404. Yet, determining whether

a student received a FAPE is a question of fact. *P.P.*, 585 F.3d at 735.

> ### A.   Hearing Officer Skidmore erred in finding that the District provided K.W. a FAPE during the 2020-21 school year.

The Family has satisfied its burden in showing that Hearing Officer Skidmore erred in

finding that the District provided K.W. a FAPE during the 2020-21 school year.

K.W. had behavioral problems before and during the 2020-21 school year that "interfere[d]

with learning." *See* 22 Pa. Code § 14.133(b). The record shows that (1) K.W. had behavioral needs

over the 2020-21 school year that were not addressed in his IEP and (2) an individualized PBSP

based on an FBA would have been significantly beneficial in documenting and identifying

antecedent behaviors (triggers), assessing the perceived function of those concerning actions, and

creating strategies to cogently correct those behaviors. *See e.g.*, ECF No. 5-7, N.T. 190-93, 196;

ECF No. 5-6, N.T. 314-316; ECF No. 5-10, Ex. SD-2 at 34; ECF No. 5-10, Ex. SD-5 at 16.[8] The

District and its agents failed to address those problems with an individualized PBSP based on an

FBA. *See* ECF No. 5-12, Ex. P-2 at 10.

The purpose of an individualized PBSP based on an FBA is to collect behavioral data and

develop strategies to address "behavioral problems in a systematic and consistent way." *See*

*Lauren P. v. Wissahickon Sch. Dist.*, 310 Fed. App'x. 552, 554 (3d Cir. 2009). Instead of a

documented and individualized PBSP based on a functional analysis of K.W.'s behavior, the

---

[8] *See also*, "Annotated Positive Behavior Support Plan." Pennsylvania Training and Technical Assistance Network. https://www.pattan.net/Publications/Annotated-Positive-Behavior-Support-Plan.

District, through its agents, employed YALE's School-Wide PBSP. ECF No. In so doing, the District failed to document the 'tweaks' staff made to K.W.'s IEP and sufficiently track his behavioral progress. *See Endrew F.*, 580 U.S. at 391.

Hearing Officer Skidmore erred in two connected ways. First, the Hearing Officer erred by excusing the lack of an individualized PBSP based on an FBA in K.W.'s IEP. The District had plenty of notice at the time the IEP was created that K.W. needed additional, individualized behavioral supports. *See* ECF No. 5-12, Ex. P-1 at 39-40; *see also*, ECF No. 5-14, Ex. P-16 at 30-32*; G.D. v. Wissahickon Sch. Dist.*, 832 F.Supp.2d 455, 467 (E.D. Pa. 2011) (ruling that even where a student made academic progress, he was denied a FAPE because the District failed to implement an appropriate behavioral program). Second, Hearing Officer Skidmore erred by finding that the Family did not meet its burden to establish the inappropriateness of the IEP because it failed to introduce behavior data. *See C.F. v. New York City Dept. of Educ.*, 746 F.3d 68, 81 (2d Cir. 2014).[9]

### 1.   Hearing Officer Skidmore erred in excusing the District's lack of an individualized Positive Behavioral Support Plan

This Court finds that Hearing Officer Skidmore erred in concluding that the lack of "communication, assistive technology, or behavior needs" under the "Special Considerations

---

[9] The Second Circuit has explained that "the sufficiency of [a district's] strategies for dealing with [problematic] behavior 'is precisely the type of issue upon which the IDEA requires deference to the expertise of the administrative officers.'" *A.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 172-73 (2d Cir. 2009) (citing *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 382 (2d Cir. 2003) (internal quotations omitted)). However, that deference ends under a record such as this, where the local educational agency failed to implement the independent experts' recommendations by failing to administer and apply an individualized PBSP based on an FBA. Thus, because K.W.'s educational program failed to include appropriate individualized behavioral interventions, which were necessary given K.W.'s individualized needs and circumstances, K.W. failed to make behavioral progress. *Compare* ECF No. 5-12, Ex. P-1 at 39-40 *with* ECF No. 5-12, Ex. P-3 at 36 (demonstrating the lack of behavioral progress).

section" of the December 2020 IEP was merely a "minor procedural irregularity that, standing alone, does not constitute a denial of FAPE." ECF No. 5-3 at 24-26. The Hearing Officer did note, however, that if K.W. had needs over the 2020-21 school year that were not addressed through individual, classroom, or schoolwide programs, this argument would likely favor the [Family]." *Id.* at 24-25. This Court finds K.W. did have such needs that were not met, and therefore, Hearing Officer Skidmore incorrectly excused the lack of an individualized PBSP based on an FBA.

Because the IEP is the "primary vehicle" for ensuring that a student is provided a FAPE, this Court looks to the IEP's content when determining whether it was "reasonably calculated" for K.W. to receive sufficient "educational benefits." *See Fry*, 580 U.S. at 158. The administrative record shows that the District had an obligation to conduct a Functional Behavioral Assessment ("FBA") and implement a PBSP based on those findings to comply with the substantive FAPE requirements. *See* 22 Pa. Code § 14.133(b).

The District knew K.W. required a PBSP based on an FBA at least as early as when the September 2019 IEE was released. *See* ECF No. 5-10, Ex. SD-1. Pursuant to 34 C.F.R. § 300.502(c)(1), the District is required to "consider" the findings of IEE's "in any decision made with respect to the provision of FAPE to the child." 34 C.F.R. § 300.502(c)(1). Relevant to behavior, the September 2019 IEE recommended: (1) an updated FBA to target physical aggression, verbal aggression, task engagement and completion, appropriate peer interactions, remaining in his seat appropriately to directions, and transitioning through the hallway/school building in an appropriate manner; (2) a PBSB; and (3) a crisis plan due to [K.W.'s] elevated risk of harming himself or others." ECF No. 20-1 at 15 (citing ECF No. 5-12, Ex. P-1 at 39-40).

This Court agrees with the Family that the September 2019 IEE along with K.W.'s records from Vanguard put the District on notice that K.W. required an individualized PBSP to address

his social, emotional, and behavioral needs. *See D.K.*, 2010 WL 1223596 at *9 (An FBA is required "where a [student] has been identified with a disability and has an IEP in place, yet still displays behavioral problems."); *see also,* ECF No. 5-14, Ex. P-16; ECF No. 20-1 at 12, 14. The District responds, arguing that the IDEA does not require the District to adopt all—or even any—of the recommendations in an IEE. ECF No. 25 at 4; *see also,* 34 CFR 300.502(c)(1); 20 U.S.C. § 1414(d)(3)(B)(i). Rather, under the plain language of the IDEA, the District is only required to "consider" those recommendations, which the District claims it has clearly done. ECF No. 25 at 4. However, merely "consider[ing]" those recommendations is not automatically sufficient because "whether an education is 'appropriate' depends on the individual child's abilities and needs." *Norristown Area Sch Dist.*, 636 Fed. App'x. at 861.

The updated December 2020 IEP under the "Special Considerations" section contains a question that reads, "[d]oes the student exhibit behaviors that impede his/her learning or that of others?" ECF No. 5-10, Ex. SD-5 at 10; ECF No. 5-12, Ex. P-2 at 10. If the "yes" box was checked off, the IEP team would have been required to develop a PBSP based on a functional assessment of behavior and that utilizing positive behavior techniques. *See id.* However, this box was marked "no" despite Dr. Kachmar's September 2019 IEE clearly advising the District that K.W. required these special considerations. *Cf.* ECF No. 5-10, Ex. SD-1 at 39-40.

The substance of the IEP and its centrality as the "vehicle" by which a student is "ensured a FAPE" directly contradicts the District's argument that it did not need to conduct the behavioral analyses Dr. Kachmar recommended. *See Lauren P.* 310 Fed. App'x. at 554 (holding that the District denied a student a FAPE where if it failed to address the student's "behavioral problems in a systematic and consistent way"); *see also,* ECF No. 5-7, N.T. 206-07.

Moreover, Pennsylvania Administrative Code requires that, when a student exhibits "behavior that interferes with learning… [a] positive behavior support plan **shall** be developed by the IEP team." 22 Pa. Code § 14.133(b) (emphasis added). This PBSP must "be based on a functional behavior assessment and become part of the individual… student's IEP." *Id.* The District contests that YALE's use of its School-Wide PBSP in conjunction with "individualized behavioral strategies" rather than a "documented" individualized PBSP was sufficient. ECF No 28 at 36:9-13. This Court finds the District's argument unpersuasive because the purpose of an individualized PBSP based on an FBA is to address "behavioral problems in a systematic and consistent way." *See Lauren P.*, 310 Fed. App'x. at 554; *see also, Colonial Sch. Dist.*, WL 1517562 at *15-16; ECF No. 5-7, N.T. 190-92.

An FBA is not always required but is necessary where a student has an "IEP in place, yet . . . still displays behavioral problems." *D.K. v. Abington Sch. Dist.*, 08–cv–4914, 2010 WL 1223596 at *9 (E.D. Pa., Mar. 25, 2010), *aff'd* 696 F.3d 233 (3d Cir. 2012); *see also,* 20 U.S.C. § 1414(d)(3)(B)(i). One of K.W.'s teachers, who partook in the development of the December 2020 IEP at YALE, noted in her testimony that she was aware K.W. had a history of aggressive behaviors, both physically and verbally. ECF No. 5-7, N.T. 190-92. However, neither the December 2020 IEP nor K.W.'s subsequent IEP's addressed these issues.[10] *See* ECF No. 5-13, Ex. P-6 at 10; *see also,* ECF No. 5-10, Ex. SD-5 at 10. The same teacher further testified that she

---

[10] The District also points to the "Behavior Summary" portion of K.W.'s December 2020 IEP to argue that the District included the School-Wide PBSP in K.W.'s IEP. *See* ECF No. 5-12, Ex. P-2 at 15. However, this too is unpersuasive, as this section includes no measurable goals, nor a section to track K.W.'s behavioral progress. *See Endrew F.*, 580 U.S. at 391 ("The IDEA requires that every IEP… set out 'measurable annual goals, including academic and functional goals,' along with a 'description of how the child's progress toward meeting' those goals will be gauged.") (quoting 20 USCA § 1414(d)(1)(A)(i)(I)-(III)). Thus, because education extends beyond "discrete academic skills" this aspect of K.W.'s education was deficient. *See Ridgewood Bd. of Educ.*, 172 F.3d at 247.

frequently had to use de-escalation techniques with K.W. because he was often frustrated, yelling, or running around the classroom. ECF No. 5-7, N.T. 190-92, 206-07; *see* ECF No. 5-14, Ex. P-16 at 30. These are clearly "behavioral problems" and thus, the District had a duty to implement a PBSP based on an FBA. *See* 22 Pa. Code § 14.133(b); *see also, G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 625 (3d Cir. 2015) (The school district has an "independent duty" to identify a student's needs, "within a reasonable time period and to work with the parents and the IEP team to expeditiously design and implement an appropriate program."). Therefore, the Hearing Officer erred in finding that the September 2019 IEE's "recommendation for a new FBA and PBSP was not applicable." ECF No. 5-3 at 25.

Hearing Officer Skidmore erred in finding K.W.'s IEP be "largely consistent" with the September 2019 IEE (*id.*), as this is not the correct standard for assessing the adequacy of an IEP. *See Endrew F.*, 580 U.S. at 400. Rather, as mentioned before, "at a minimum" the IEP must be "reasonably calculated to enable the child to receive educational benefits in light of the student's intellectual potential." *D.S.*, 602 F.3d at 557 (quoting *Chambers v. Phila. Bd. of Educ.*, 587 F.3d 176, 182 (3d Cir. 2009) (internal quotations omitted)).

The evidence is preponderant that K.W. required individualized behavioral supports and that the implemented behavioral support plan was inadequate. Therefore, the record does not support the Hearing Officer's conclusion that the IEP team's failure to implement an individualized PBSP was a "minor procedural irregularity." *See* ECF No 5-3 at 26.

Based on the recommendations of Dr. Kachmar and K.W.'s clear behavioral needs, a PBSP based on an FBA was required "to permit the [K.W. and his classmates] to benefit from . . . instruction." *See Fry*, 580 U.S. at 158. Given K.W.'s "unique needs," he required a PBSP based

on the findings of an FBA for his education to be "reasonably calculated" to make "appropriate progress in light of [his] circumstances." *See Endrew F.*, 580 U.S. at 400.

Moreover, Hearing Officer Skidmore erred in finding that the Family did not meet its burden to establish the inappropriateness of the IEP because it failed to introduce behavioral data. *See* ECF No. 5-3 at 25. While the burden of persuasion is borne by the party seeking relief (*Schaffer*, 546 U.S. at 62), it was the duty of the District, rather than the Family, to collect relevant behavioral data. *See G.L.*, 802 F.3d at 625; *see also,* 22 Pa. Code §§ 14.131(a)(1)(i), 14.133(a)-(b). The Family attributed the lack of behavioral data to a lack of IEP goals. ECF No. 5-3 at 25. The Hearing Officer rejected this argument, reasoning that "individualized goals and specially designed instruction . . . were considered to be unnecessary" and that therefore the absence of such goals did not amount to a denial of a FAPE. *Id.*[11] The Hearing Officer erred in holding this lack of behavioral data against the Family (*see id.*) when in fact the lack of behavioral data supports the conclusion that K.W.'s IEP was substantively inappropriate. *See C.F.*, 746 F.3d at 81 (quoting 20 U.S.C. § 1415(f)(3)(E)(ii)) (A procedural violation of producing an "inappropriately vague behavioral intervention plan without producing a functional behavioral assessment" can constitute a substantive denial of a FAPE where such violations "'impeded the child's right to a free appropriate public education,' 'significantly impeded the parents' opportunity to participate in the decision-making process,' or 'caused a deprivation of educational benefits.'").

Here, as in *Lauren P.*, the District's failure to address the student's "behavioral problems in a systematic and consistent way" adversely affected the IEP team's ability to adequately assess

---

[11] Hearing Officer Skidmore explained that "the lack of a specific provision in the IEP for adaptive behavior interventions does not mean that this deficit was ignored." ECF No. 5-3 at 25. Rather, according to the Hearing Officer, "those skills are part and parcel of many of the special education and related services" YALE provided to K.W. *Id.*

K.W.'s behavioral needs. 310 Fed. App'x. at 554. The reason the record contains a lack of behavioral data is because of the District's failure to implement an individualized PBSP based on an FBA, thereby denying K.W. a substantive FAPE. *See Jalen Z. v. Sch. Dist. of Phila.*, 104 F.Supp.3d 660, 669-70 (E.D. Pa. 2015) (quoting *D.K.*, 2010 WL 1223596 at *9) (noting that the IDEA generally requires a functional behavioral analysis "when a child has been identified with a disability and has an IEP in place, yet still displays behavioral problems").

### B.    The Hearing Officer erred in finding that the District had provided K.W. a FAPE over the 2021-22 school year through April 15, 2022

Just as the District denied K.W. a FAPE during the 2020-21 school year by failing to implement a PBSP based on an FBA, so too did it deny K.W. a FAPE during the 2021-22 school year. The Family contends that the District failed to provide K.W. a FAPE during the 2021-22 school year, just as it failed during the prior year and argues that Hearing Officer Skidmore's "excusal of the lack of appropriate programming by permitting the District 'time to recognize signs of a need for program revision' is inconsistent with the fact that the District was on notice since the [September 2019 IEE] that [K.W.] needed an individualized PBSP." ECF No. 20-1 at 18 (citing ECF No. 5-3 at 26).[12] This Court agrees.

As explained *supra*, the District had ample notice that it needed to update K.W.'s IEP to include an individualized PBSP based on an FBA. *See e.g.*, ECF No. 5-14, Ex. P-16 at 30-32 (displaying that the District had notice of K.W.'s behavioral problems at least as early as the 2019 school year). To justify the lack of an individualized PBSP, the District unconvincingly points to the testimony of Ms. Hassan, who testified that she used the "School-Wide PBSP," whereby, for example, staff gave paper "Y.A.L.E. bucks" to students when they behaved in a positive manner.

---

[12] Because K.W.'s IEP was not changed until November 2021 the Family rests on the same arguments to contend that K.W. did not receive a FAPE during this period. ECF No. 20-1 at 18.

ECF No. 5-6, N.T. 327. However, Ms. Hassan testified that this system was not working for K.W., as he "wouldn't understand the process." *Id.* Ms. Hassan made tweaks to this program, just as she made tweaks to K.W.'s IEP when she felt he needed more one-on-one attention. *Id.* at 324-27. These tweaks and their supposed success were not documented in K.W.'s IEP or his progress reports. *See e.g.*, ECF No. 5-13, Ex. P-6; ECF No. 5-13, Ex. P-9 (showing that the District did not record behavioral data). Ms. Hassan still testified that she contacted a behavior specialist, implying that the School-Wide PBSP was not working for K.W. ECF No. 5-6, N.T. 328-29. Thus, the behavioral components of K.W.'s IEP were clearly inappropriate, and the School-Wide PBSP was evidently insufficient given K.W.'s individualized needs and circumstances. *See Endrew F.*, 580 U.S. at 400. Further, Ms. Hassan placed blame for K.W.'s behavioral regression upon his poor attendance record, but she also says she never discussed these concerns with K.W.'s Mother. ECF No. 5-6, N.T. 327:13-19.

The District similarly casts blame upon K.W.'s attendance record. ECF No. 21-1 at 9; *see also,* ECF No. 5-11, Ex. SD-37 (K.W.'s attendance record); ECF No. 11, Ex. SD-12 at 2 (noting a teacher's comment, which stated, "[p]rogress is minimal due to excessive absences"). The Hearing Officer agreed that K.W.'s "performance was affected by [inconsistent] attendance." ECF No. 5-3 ¶ 48. However, the Hearing Officer concluded that K.W.'s absences "cannot be deemed the sole reason for the newly observed behavior difficulties." *Id.* at 26. This Court finds that these were not "newly observed behavior difficulties," rather, as mentioned *supra*, these were behaviors that were observed in 2019 at Vanguard and had gone untreated at YALE without a documented, individualized behavioral program. *Cf.* ECF No. 5-14, Ex. P-16 30-32 (showing that these behaviors were not "newly observed"); *see also,* ECF No. 5-7, N.T. 190-92, 206-07 (demonstrating that YALE knew of K.W.'s history of aggressive behaviors).

This Court agrees with the Family that Hearing Officer Skidmore erroneously speculated that had K.W. remained at YALE, the school would likely have developed an individualized PBSP. *See* ECF No. 5-3 at 26 (the Hearing Officer's speculation). This finding is not supported by the record. According to the District itself, the November 2021 proposed IEP and placement was "only a change in the location of services being delivered, not the services themselves." ECF No. 25 at 10. Thus, at the November 2021 IEP meeting, the District still did not plan to implement an individualized PBSP based on an FBA, despite three experts who recommended otherwise, making Hearing Officer Skidmore's speculation erroneous. *See* ECF No. 28 at 20:19-24 (showing that the District planned to implement the same IEP).

The Family further avers that Hearing Officer Skidmore erred in finding (1) the November 2021 proposed IEP and placement substantively appropriate, (2) the removal from YALE procedurally appropriate, and (3) the proposed placement in Devereux procedurally appropriate. ECF No. 20-1 at 18-23.

The November 2021 proposed IEP and placement was also inappropriate because like the IEPs before, it similarly failed to consider K.W.'s need for an individualized PBSP based on an FBA. Despite ample evidence and opinions suggesting K.W. required an individualized PBSP based on an FBA, the District ***still*** failed to implement one during the 2021-22 school year. *See* ECF No. 5-11, Ex. SD-17 (showing that the District still utilized the school-wide PBSP, and it was not working for K.W.).

This is not "Monday morning quarterbacking" as the District suggests. ECF No. 28 at 18. Rather, K.W.'s deteriorating behavior was the foreseeable result of the District's failure to implement an appropriate, individualized PBSP based on an FBA. *See Tyler W. v. Upper Perkiomen Sch. Dist.*, 963 F.Supp.2d 427, 439 (E.D. Pa. 2013) (noting that where a District knew

of a student's needs "well in advance" of the start of a year, "an appropriate program to address those [behavioral] needs should have been in place"). By November 2021, the District had obtained Dr. Mitchell's report—which echoed the findings from Dr. Kachmar's September 2019 IEE—and surely knew K.W. required a PBSP based on an FBA. *Compare* ECF No. 5-12, Ex. P-1 at 39-40 *with* ECF No. 5-12, Ex. P-3 at 36 (showing Dr. Mitchell echoed many of Dr. Mitchell's findings); *see also* ECF No. 5-14, Ex. P-16 at 30-32 (demonstrating that the District had notice of K.W.'s behavioral problems at Vanguard). The District also had input from a Board-Certified Behavior Analyst, Sandra Rogers, who made the same recommendation. *See* ECF No. 5-13, Ex. P-6 at 19. Yet, the IEP team did not update K.W.'s IEP to reflect these needs, and the District planned to implement the same "program" in a different "location." ECF No. 25 at 10.

The Family contends the November 2021 IEP was substantively inappropriate because it failed to (1) include an individualized PBSP (despite the findings of two psychologists and K.W.'s deteriorating behavior) and (2) consider and incorporate the findings of the Mitchell IEE. ECF No. 20-1 at 18-19. This Court agrees with the Family that the District was on notice of K.W.'s need for an individualized PBSP since the September 2019 IEE. *See* ECF No. 5-13, Ex. P-3 at 36.

In his 2021 IEE, Dr. Mitchell reported:

> Since he can be overwhelmed and have difficulty self-regulating much of the time, clear PBSP protocols should address both externalizing and internalizing behaviors. The behavioral approach should be revised on a regular basis to maintain relevance, especially as [K.W.] ages and becomes more invested in the design and implementation of his behavioral/educational programming.
> *Id.*

Despite these findings, K.W.'s IEP was not updated to include an individualized PBSP based on an FBA. *See* ECF No. 5-11, Ex. SD-23 (demonstrating that the IEP revisions made in

2021 still did not include an individualized PBSP based on an FBA). Foreseeably, K.W.'s behavior deteriorated. *See* ECF No. 5-3 at 14-15 (discussing K.W.'s behavioral regression).

Given the information known at the time, it was as clear as could be that K.W. required an individualized PBSP based on an FBA for his IEP to be "tailored [to his] unique needs." *Fry*, 580 U.S. at 158. K.W. exhibited behaviors that "interfere[d] with learning" even with the IEP in place. 22 Pa. Code § 14.133(b). Therefore, Hearing Officer Skidmore erred in finding that K.W. was provided a FAPE until spring 2022. *See* ECF No. 5-3 at 27. The District sought to again place K.W. in a fulltime autistic support program without an appropriate behavioral program while expecting a different result. *See* ECF No. 25 at 11 (noting that Devereux was selected because it could implement K.W.'s November 2021 IEP, which did not include an individualized PBSP based on an FBA).

From at least April 5, 2022 until the end of the school year, K.W. was not receiving any formal education. *See* ECF No. 5-11, Ex. SD-45 at 2. The record shows that Dr. Mitchell, whose consultants were hired to provide tutoring to K.W., was under the impression as of April 5, 2022, that his "consultants ha[d] not been welcomed by the [F]amily to provide services." *Id.*; *see also*, ECF No. 5-7, N.T. 272, 278 (showing that Dr. Mitchell was not welcomed back).

The Hearing Officer ruled that the District could offset K.W.'s award of compensatory education by the number of hours of tutoring provided by Dr. Mitchell's staff. ECF No 5-3 at 30. However, because this Court has determined that K.W. was not provided with a FAPE due to his substantively inappropriate behavioral program, the Hearing Officer's offsetting of K.W.'s compensatory award by the number of hours of tutoring provided is no longer relevant.

Since the District failed to provide K.W. with a FAPE during the 2021-22 school year due to the substantively inadequate November 2021 proposed IEP and placement, this Court need not

reach the Family's other arguments that K.W.'s removal from YALE or the proposed placement in Devereaux also led to a denial of FAPE during that school year.

## V.    REMEDIES

When a student is denied a FAPE, "that child is entitled to be made whole with nothing less than a 'complete' remedy." *G.L.*, 802 F.3d at 625. Congress has empowered the courts to "fashion an appropriate remedy to cure the deprivation of a child's right to a free appropriate public education." *Lester H. v. Gilhool*, 916 F.2d 865, 873 (3d Cir. 1990). "This is a profound responsibility, with the power to change the trajectory of a child's life." *G.L.*, 802 F.3d at 625. Thus, the "courts, in the exercise of their broad discretion, may award [compensatory education] to whatever extent necessary to make up for the child's lost progress and to restore the child to the educational path he or she would have traveled but for the deprivation." *Id.*

Compensatory education, therefore, "is a retrospective and in kind remedy for failure to provide an appropriate education." *P.P.*, 585 F.3d at 740. Such a remedy is "an appropriate form of equitable relief where a local educational agency ("LEA") knows, or should know, that a child's special education program is not appropriate . . . and the LEA fails to take steps to remedy deficiencies in the program." *R.B.,* 509 F.Supp.3d at 349 (citing *M.C. v. Cent. Reg'l Sch. Dist.*, 81 F.3d 389, 397 (3d Cir. 1996)). Thus, a compensatory education "belatedly allows [a student] to receive the remainder of his free and appropriate public education." *Lester H.*, 916 F.2d at 873.

This type of award is designed to address the period during which a student lacked appropriate educational services, while also accounting for the reasonable time required for a school district to rectify the deficiency. *M.C.*, 81 F.3d at 397; *see also*, *D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 499 (3d Cir. 2012) (repeating standard); *Mary T.*, 575 F.3d at 249 (same); *Lauren W. v. DeFlaminis*, 480 F.3d 259, 272 (3d Cir. 2007) (same). In certain circumstances, "full days of compensatory education (meaning one hour of compensatory

education for each hour that school was in session) may be warranted when the overarching impact of a district's denial of FAPE resulted in a pervasive loss of a student's educational benefit." *R.B.*, 509 F.Supp.3d at 349 (citing *Tyler W.*, 963 F.Supp.2d at 438-39 (finding that a district's failure to address a student's needs pervaded his entire school day and warranted the award of full days of compensatory education where "there was absolutely no implementation of [student's] IEP")).

Students in the first to the sixth grade are entitled to a minimum of five hours of instruction over a minimum period of 180 days (equaling a minimum of 900 total hours of education) for each school year. 22 Pa. Code §§ 11.1, 11.3.

### A.        2020-21 school year

Because Hearing Officer Skidmore erred in finding that K.W. received a FAPE during the 2020-21 school year, she erred in excluding this year from K.W.'s award. While K.W. only began attending YALE in-person on November 2, 2020, the District knew of K.W.'s behavioral needs long before then. As previously mentioned, because K.W. exhibited behavior that interfered with learning even with his Vanguard IEP in place, the District knew that K.W. required an individualized PBSP based on an FBA at least as early as early as the spring of 2020. *See* ECF No. 5-3 at 7, n.7.

Despite this knowledge, the District failed to implement an appropriate behavioral program, thereby denying K.W. a FAPE.[13] Therefore, K.W. is entitled to an award of compensatory education for the entirety of the 2020-21 school year (900 hours).

---

[13] While data collection for an FBA is heavily dependent on the student's environment (*see supra* n.5, "Functional Behavioral Assessment Process" at 4), the District is not entitled to a reduction in K.W.'s compensatory award for the period during which he was attending YALE virtually. K.W.'s "right to compensatory education accrue[d] when the school [knew] or should know[n] that the student [was] receiving an inappropriate education." *Lauren W.*, 480 F.3d at 272. If the record contained any indication that the District planned to implement an appropriate behavioral program following K.W.'s transition to in-person learning, then excluding a reasonable period of time for conducting an FBA and implementing an individualized PBSP would be warranted. But that is not

**B.      2021-22 school year**

Because Hearing Officer Skidmore erred in finding K.W. was provided a FAPE prior to the spring of 2022, she erred in excluding this period from the ordered remedy.

The Hearing Officer ruled that K.W. was denied a FAPE beginning in the spring of 2022. ECF No. 5-3 at 30. Thus, Hearing Officer Skidmore ordered the family quantitative relief in the form of "five hours of compensatory education for each day that the District's schools were in session from April 18, 2022 through the end of the 2021-22 school year, and for each day that an appropriate program and placement are not made available to Student at the start of the 2022-23 school year." *Id.* The Hearing Officer further concluded that the "District may offset the award of compensatory education by the number of hours of tutoring provided by [the] staff of [Dr. Mitchell]." *Id.*

The District argues that Hearing Officer Skidmore erred in awarding the family "***any*** compensatory education for the time period after the District offered K.W. the November 2021 IEP, including the Summer of 2022." ECF No 25 at 13 (emphasis supplied). The District contends that providing the Family such relief would create a perverse incentive, as families would be able to recover damages by rejecting any IEP that is not "ideal" in their mind.[14] *Id.* However, as

_____

the case. Here, as in *Tyler W.*, the District knew of K.W.'s student's needs "well in advance" of the start of a year. 963 F.Supp.2d at 439. Thus, "an appropriate program" or plan "to address those [behavioral] needs should have been in place." *Id.* Moreover, while the COVID-19 pandemic required schools to be flexible, public schools were still under the obligation to offer students with a FAPE. *See A.D. v. Upper Merion Area Sch. Dist.*, No. 21-5468, 2022 WL 16553379, at *7 (E.D. Pa. Oct. 28, 2022) (citing *Downingtown Area Sch. Dist. v. G.W.*, No. 19-5424, 2020 WL 5981902, at *8 (E.D. Pa. Oct. 8, 2020) ("The delays may have been out of the District's control, but those difficulties cannot diminish [student]'s right to a FAPE.") (citation and internal quotations omitted)).

[14] The District avers, *inter alia*, that K.W.'s Mother's "decision to reject this appropriate IEP because of her own preferences should not result in liability for the District. To hold otherwise would impose additional responsibilities on the District . . . transforming the IDEA and Section 504's requirement that schools provide students with disabilities a Free **Appropriate** Public

explained, the District's plan was to implement the K.W.'s November 2021 IEP (which was inappropriate), and thus, the District failed to offer K.W. a FAPE during the 2021-22 school year. *See* ECF No. 28 at 20:19-24.

As mentioned prior, the Hearing Officer's offsetting this award is now irrelevant because this Court finds that K.W. had been denied a FAPE for the entirety of the 2021-22 school year. Thus, this Court will fulfil the Family's request and order additional compensatory education for: (1) 2021-22 school year (totaling 900 hours minus the number of hours already received) and (2) Extended School Year ("ESY") (summer) 2022.

### C.      Attorneys' fees

The IDEA authorizes courts to award "reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." *K.C. v. Nazareth Area Sch. Dist.*, 806 F.Supp.2d 806, 830 (E.D. Pa. 2011) (citing 20 U.S.C. § 1415(i)(3)(B)). "[F]or attorneys' fees purposes, [a party prevails] only if he obtains relief that is 'in some way merit[s]-based.'" *M.R. v. Ridley Sch. Dist.*, 868 F.3d 218, 224 (3d Cir. 2017) (quoting *Raab v. City of Ocean City, N.J.*, 833 F.3d 286, 293 (3rd Cir. 2016)) (alteration supplied). "[W]here the action enforces the parents' right to reimbursement or the child's right to compensatory education and the parents obtain backward-looking compensatory relief, the action requires an independent merits determination and the parents are eligible for a fee award." *Id.* at 230 (citations omitted).

---

Education [to requiring] that schools provide students with a Free **Ideal** Public Education." ECF No. 25-1 at 13 (emphasis supplied). However, this is not about what is "ideal," as the November 2021 proposed placement was not appropriate. *See* 22 Pa. Code § 14.133(b). K.W. exhibited "behaviors that interfere[d]" with learning, and three different experts now put the District on notice that K.W. required a documented, individualized PBSP based on an FBA. *See id.* The District's proposed IEP and placement was inappropriate.

Under the IDEA, an award of attorney's fees "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection." 20 U.S.C.A. § 1415(i)(3)(C). Because the Family has prevailed on the merits and this Court finds that K.W. was deprived a FAPE during the 2020-21 and 2021-22 school years, the Family is also entitled to reasonable attorney's fees and costs.

## VI.   CONCLUSION

For the foregoing reasons, this Court finds that Upper Darby School District denied K.W. a FAPE during the 2020-21 and 2021-22 school years. Therefore, the Family's Motion for Summary Judgment on the Administrative Record (ECF No. 20) is granted in full and Upper Darby School District's Motion for Summary Judgment on the Administrative Record (ECF No. 21) is denied. Appropriate Orders follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**
_____
**CHAD F. KENNEY, JUDGE**